Report: CZR0026

<table>
<tr><td></td><td>21ST JUDICIAL CIRCUIT</td><td>Date:</td><td>26-Aug-2011</td></tr>
<tr><td></td><td>ST LOUIS COUNTY</td><td>Time:</td><td>9:43:42AM</td></tr>
<tr><td></td><td>CIRCUIT COURT DOCKET SHEET</td><td>Page:</td><td>1</td></tr>
</table>

**11SL-CC03412     DAVID SCHWARTZ V WEBSTER UNIVERSITY**          Security Level: 1 Public

| Case Type: | CC Breach of Contract | Case Filing Date: | 24-Aug-2011 |
|---|---|---|---|
| Status: | Pet Filed in Circuit Ct | | |
| Disposition: | | Disposition Date: | |

Release/Status Reason
Change Date

| | |
|---|---|
| Judge | MICHAEL T JAMISON (25730) |
| Plaintiff | DAVID  SCHWARTZ (@408875) |
| Attorney for Plaintiff | LOREN ISRAEL ETTINGER(44246) |
| Defendant | WEBSTER UNIVERSITY (WBSTRUNIV) |

| Filing Date | Description | |
|---|---|---|
| 24-Aug-2011 | **Judge Assigned**<br>DIV 10 | SHINELTM |
| | **Filing:**<br>FILING INFORMATION SHEET | GALLOJAD |
| | **Motion Special Process Server**<br>WILLIAM STAGE APPROVED AUGUST 26, 2011 | GALLOJAD |
| | **Pet Filed in Circuit Ct** | SHINELTM |
| 26-Aug-2011 | **Summons Issued-Circuit**<br>Document ID: 11-SMCC-11202, for WEBSTER UNIVERSITY. - MAILED TO ATTORNEY | GALLOJAD |



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>MICHAEL T JAMISON | Case Number: 11SL-CC03412 |
|---|---|
| Plaintiff/Petitioner:<br>DAVID SCHWARTZ | Plaintiff's/Petitioner's Attorney/Address<br>LOREN ISRAEL ETTINGER<br>7TH FL<br>7800 FORSYTH BLVD<br>SAINT LOUIS, MO 63105 |
| vs. | |
| Defendant/Respondent:<br>WEBSTER UNIVERSITY | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>7900 CARONDELET AVE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

| | |
|---|---|
| The State of Missouri to: **WEBSTER UNIVERSITY**<br>Alias:<br>470 EAST LOCKWOOD AVENUE<br>SAINT LOUIS, MO 63119 | **SERVE: DR. ELIZABETH J. STROBLE** |

*COURT SEAL OF*

      You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

*ST. LOUIS COUNTY*

26-AUG-2011
Date

_____
Clerk

Further Information:
JDG

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____      _____
Printed Name of Sheriff or Server      Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*      Subscribed and sworn to before me on _____ (date).

My commission expires: _____      _____
      Date      Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $    10.00 |
| Mileage | $_____ (_____ miles @ $ . _____ per mile) |
| Total | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

**David Schwartz**
Plaintiff/Petitioner

Date **8/23/2011**

vs.

**Webster University**
Defendant/Respondent

Case Number

Division **10**

For File Stamp Only

11SL-CC03412

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now _____ **Plaintiff** _____ pursuant
                  Requesting Party

to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
**William Stage**                                   **314.420.2226**
Name of Process Server                  Address                              Telephone

_____
Name of Process Server          Address or in the Alternative                Telephone

_____
Name of Process Server          Address or in the Alternative                Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties. This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE: **Webster University**
**Dr. Elizabeth J. Stroble, Registered Agent**
Name
**470 East Lockwood Avenue**
Address
**St. Louis, MO 63119**
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

Appointed as requested:
**JOAN M. GILMER**, Circuit Clerk

By _____
     Deputy Clerk

Date **August 26, 2011**

**Kodner Watkins Kloecker, LC**
**Loren J. Ettinger**
Attorney/Plaintiff/Petitioner
Bar No. **44246**
Address **7800 Forsyth, 7th Floor**   **St. Louis, MO 63105**
Phone No. **314.727.9111**   **314.727.9110** Fax No.

CCADM62    Rev. 03/06    WHITE – File          YELLOW-Special Process Server    PINK - Attorney/Petitioner

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

DAVID SCHWARTZ,                         )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )      Case No.:
                                        )
WEBSTER UNIVERSITY,                     )      Division No.:
                                        )
Serve:    Dr. Elizabeth J. Stroble      )
          470 East Lockwood Avenue      )
          St. Louis, MO 63119           )
                                        )
            Defendant.                  )

## PETITION

COMES NOW Plaintiff, David Schwartz, individually and by and through his undersigned counsel, and for his Petition for Negligent Misrepresentation, Fraudulent Misrepresentation, Breach of Contract, Intentional Interference with Contractual Expectancy, and Violation of Due Process 42 U.S.C.A. § 1983, states to the Court as follows:

### COMMON ALLEGATIONS

1.      Plaintiff is and all times pertinent hereto was a resident of the County of St. Louis, Missouri.

2.      Defendant, Webster University, is and at all times pertinent hereto was an educational institution operating and doing business worldwide in, among other multiple locations, the County of St. Louis, Missouri, and holding itself out as an institute of higher learning.

3.      At all times pertinent hereto, Defendant, Webster University, offered graduate degrees to its students including a Master of Arts in Counseling ("Masters Degree").

4.      In approximately June of 2009, Plaintiff entered the Master of Arts in

Counseling program at Webster University (the "Masters Program").

5.　　Through the fall semester of 2010, the Plaintiff's cumulative grade point average was 3.78, evidencing the receipt by the Plaintiff of all "A's" and one "C" in his grades received then to date.

6.　　In the fall of 2010, the Plaintiff was encouraged by Michael Mahon, the Webster University Site Director, to commence a search for an agency with which Plaintiff could associate and carry out his Counseling Learning Practicum ("Practicum") scheduled to commence in the spring of 2011.  The Practicum is a beginning clinical counseling experience that focuses on observation of direct client contact and evolves into leading counseling sessions, development of counseling and interpersonal skills and openness to supervision, and an understanding of the process of counseling.

7.　　The Practicum referenced in the immediately preceding paragraph is a 9 or 10 week undertaking which must be completed and is a condition precedent to receiving the Masters Degree.

8.　　In December of 2010, Plaintiff submitted an application with Webster University to secure a Practicum with Susan Clauss at the Family Resource Center ("FRC") to Dr. Stacey Henning, Worldwide Director of Counselor Education in the Department of Behavioral and Social Sciences at Webster University, being the Department responsible for oversight of the undertakings related to students pursuing the Masters Degree.

9.　　Dr. Henning thereafter lost the application referenced in the immediately preceding paragraph and the Practicum of the Plaintiff was not approved by Webster University until January of 2011.  The approval of the Plaintiff's application to secure a Practicum was only approved by Webster University following the re-submittal of same by the Plaintiff to Dr. Henning in January of 2011.

10.　　The Plaintiff was thereafter assigned career personality inventories as part of his Lifestyle and Career Development class.  One of the inventories was the Myers-Briggs Personality Type Indicator.  The Plaintiff received a score of "INFJ" on the Myers-

Briggs Personality Type Indicator. This score indicates that the Plaintiff is introverted, intuitive, feeling, and judgmental. This score exists among one percent (1%) of the population and the most enjoyable career for this type of score is designated as that of a counselor.

11.    At no time during the course of proceedings then to date was Plaintiff advised by Webster University, including his instructor, that his personality, behavior, and written worth was not consistent with that required to be a counselor.

12.    For the spring semester of 2011, Plaintiff was enrolled in a Practicum class, Techniques of Crisis Intervention, taught by a faculty member, understood then to be having an affair with a Program Director at Webster University. At all times pertinent hereto, Webster University failed to adequately supervise its personnel involved in Plaintiff's educational protocol in general, and the Practicum in particular, in that the Defendant's personnel directly involved in same was having a sexual liaison and affair with another faculty member who was directly involved in the instruction of the Plaintiff. Both individuals involved in the affair were directly involved with the Masters Program being pursued by the Plaintiff.

13.    With respect to one of the individuals involved in the affair, being the individual who was a direct professor of the Plaintiff, the Plaintiff was extremely disappointed with the quality of the teaching involved and, in fear of reprisals by virtue of that professor's affair with a supervisory person affiliated with Defendant, Webster University, and directly overseeing the Masters Program involved herein, Plaintiff wrote an anonymous letter to the Dean of Defendant's College of Arts and Sciences and to the Webster University President in February of 2011 specifically referencing the poor teaching and the affair between the two individuals.

14.    In January of 2011, the Plaintiff commenced his Practicum with the FRC for a 9-week period.

15.    As part of the Practicum with the FRC, the Plaintiff counseled St. Louis inner-city youth ("Clients") in the Misdemeanor Drug Court to assist the Clients in

3

furthering their efforts to comport with their required outpatient program.

16.     Additionally, during the Practicum with the FRC, the Plaintiff performed various job-skills counseling with individuals and groups of clients and attended Court hearings for clients and spent time with them for meals and recreation in order to mentor and develop relationships.

17.     The Practicum rules require the Plaintiff to perform recorded sessions of his counseling with clients.  Though the Plaintiff made requests of several clients to "go on tape with him," they refused to do so by virtue of the fact that they were criminally accused defendants and were rightfully and lawfully reluctant to have any of their proceedings or undertakings memorialized by means of video.  As a result, the Plaintiff performed the sessions with his wife's friend who was not a client but nonetheless agreed to be a fictitious subject for the purposes of assisting the Plaintiff with his Practicum tapes. It is important to note, Webster University has no rule prohibiting taping sessions for the non-client and it was a common practice for students to do same, and it was a common practice known by and condoned by Webster University.

18.     The tapes referenced in the immediately preceding paragraph were submitted by the Plaintiff to Dr. Henning and Ms. Clauss for their review.

19.     On February 8, 2011 and 14, 2011, Ms. Clauss completed written evaluations of the tapes on behalf of Webster University.  On two (2) evaluations, Ms. Clauss graded the Plaintiff with marks of emerging and proficient skills, which falls within the normal range.

20.     Ms. Clauss, on behalf of the Defendant, Webster University, also completed final evaluations of the Plaintiff and scored his performance at average to above average for standard comments as to his skill strengths and weaknesses, as well as recommendations for improvement.

21.     Dr. Henning also performed written evaluations of the Plaintiff utilizing the tapes and the evaluations of Ms. Clauss.  Dr. Henning reviewed her evaluations in person with the Plaintiff and gave the Plaintiff a chance to read Dr. Henning's comments;

4

however, Dr. Henning only provided verbal comments with regard to same and failed to provide the Plaintiff with a photocopy or opportunity to photocopy the evaluations.

22.     On February 24, 2011, Webster University, by and through Dr. Henning, met with the Plaintiff to perform an evaluation and review of Plaintiff's Practicum performance.

23.     At that time, Webster University, by and through Dr. Henning, indicated verbally that she would work with the Plaintiff on his skills and it might take several practica for the Plaintiff to improve.

24.     On March 3, 2011, Webster University, by and through Dr. Henning, met with the Plaintiff to perform another evaluation and review of Plaintiff's Practicum performance.  Midway through the evaluation, Dr. Henning stopped same and informed the Plaintiff that he would be terminated from the Masters Program.

25.     During this conference, Dr. Henning indicated that Plaintiff would not make a good counselor because he lacked empathy in the three (3) taped therapy sessions and Dr. Henning indicated that she doubted Plaintiff would have success in the Counseling field.

26.     At that time, the Defendant, by and through Dr. Henning, further indicated that she was unsure how Plaintiff made it through the Masters Program then to date and that other teachers should have evaluated and concluded same earlier.  At such time, no teachers had ever evaluated Plaintiff as such nor concluded the same.  In stark contrast, Plaintiff had a 3.78 Grade Point Average ("GPA") going into the Practicum which evidences that Plaintiff's professors highly approved of Plaintiff's skills and performance.

27.     Subsequent to the meeting referenced in the immediately preceding paragraph, Plaintiff received a "No Credit" grade for the Practicum.

28.     On March 14, 2011, the Plaintiff received a letter from Julian Schuster, Ph.D, Provost and Senior Vice President for Academic Affairs at Webster University, informing Plaintiff that, pursuant to the Graduate Studies Catalogue, Plaintiff was dismissed from the Masters Program.

5

29.     The applicable reason for the dismissal of the Plaintiff was the receipt by the Plaintiff of a grade of "C" (from the Fall semester of 2010) and one grade of "NC" (i.e., No Credit, for failure to complete the Practicum).

30.     The letter referenced in the immediately preceding paragraph further stated that Plaintiff can read the Graduate Studies Catalogue rules online and that he can apply for reinstatement.

31.     The grade of "NC" in Plaintiff's Practicum was arbitrary, capricious and in bad faith, as Plaintiff's conduct and performance in the Masters Program, as translated by Plaintiff's corresponding well above average GPA, exceeded academic norm.  The grade of "NC" was ironically given to Plaintiff subsequent to Plaintiff's disclosure of the sexual affair of the professor discussed above.

32.     On April 22, 2011, Plaintiff, by and through his undersigned legal counsel, issued a letter directed to the Defendant, Webster University, by and through its Dean of the College of Arts and Sciences, David C. Wilson, outlining the salient facts of the underlying fact situation and demanding that the Plaintiff be reinstated with immediate remedial measures (the "Demand Letter")..

33.     Within the text of the letter referenced above, certain sections of the Master of Arts in Counseling 2010-2011 Graduate Professional Counseling Degree Program Student Handbook ("Student Handbook") were cited, specifically relating to Remediation for Student Success Process, to wit:

> "The American Counseling Guide of Ethics (2001, 2005) and the professional standards delineated by the Council for Accreditation of Counseling and Related Educational Programs (2001, 2008) require that all counselor education programs in good standing provide for a remediation process for all counselor education students that includes regular and ongoing evaluation of a student's general fit with the counseling profession.  Appraisal will occur with subjective and objective components for didactic and clinical competencies, attention to ethical code, openness to

6

supervision and self awareness, and academic competency.  Students may be required to meet with the **Campus Counseling Advisory Committee** if they are not able to demonstrate academic successful and or appropriate interpersonal and or counseling skills development, and or resist clinical supervision.  This Committee will review the reasons for student lack of success and will interview relevent instructors and the student to determine the most appropriate path for student success related to a potential future in the Counseling profession.  The most appropriate path may include but is not limited to completion of extra course work and or field experience, completion of and or participation in personal counseling, and or dismissal from the counselor education program prior to completion of the degree program.  Hence, successful completion of the MA in Counseling professional degree program may require additional coursework beyond the stated number of degree credit hours (48 or 60) for those students requiring remedial coursework and or personal counseling.  Student openness to and cooperation with the Committee will be integral to the student's continued success within the program." [emphasis added]

34.     Notwithstanding the foregoing, the Defendant, Webster University, failed to provide the Plaintiff with an opportunity to meet with the Counseling Advisory Committee.

35.     Notwithstanding the foregoing, the Defendant, Webster University, failed to provide the Plaintiff with an opportunity to complete extra coursework or field experience.

36.     Notwithstanding the foregoing, the Defendant, Webster University, failed to provide the Defendant with the opportunity to engage in a remediation process to obtain or develop whatever basic counseling skills Dr. Henning purported that Plaintiff lacked.

37.     Rather, in contrary to its own policies and procedures, the Defendant, Webster University, summarily dismissed the Plaintiff from the Masters Program after Plaintiff spent over 1.5 years in the Masters Program, incurred student loans in excess of $70,000 for tuition, books and associated costs, worked tirelessly to earn a GPA of 3.78,

and performed above average in the Practicum.

38.     On May 13, 2011, the Defendant, Webster University, issued a letter in reply to the Demand Letter of Plaintiff's counsel, said reply letter by Defendant having been scribed and issued by legal counsel for Webster University (the "Reply Letter").

39.     The Reply Letter issued by counsel for the Defendant responded to the demands of the Plaintiff in the Demand Letter with the following assertions:

   a. The Counseling Advisory Committee is used by the faculty of the Defendant, Webster University, as a tool where the faculty concludes there is an issue with a student's "general fit with the counseling profession."

   b. The Counseling Advisory Committee is used by the faculty essentially for "unusual cases" where "student success related to a potential future in the Counseling profession" requires "something over and above" the general requirements of the Masters Program.

   c. The Counseling Advisory Committee is utilized at the discretion of the faculty to evaluate those unusual cases.

   d. A student "may" meet with the Counseling Advisory Committee, but is not required.

   e. There is "no indication that [Plaintiff] fell into this category," rather, "quite simply" [Plaintiff] was "unable to successfully pass the Practicum" when he took it.

40.     The Reply Letter also gave rise to the disclosure that Defendant, Webster University, by and through Dr. Henning, indicated that it will provide Plaintiff with additional assistance to complete the Practicum should Plaintiff seek and receive reinstatement, despite none being previously provided to Plaintiff as promised by Dr. Henning during Plaintiff's initial Practicum.

41.     Further, the response of the Defendant, Webster University, by and through its legal counsel, indicated that Plaintiff is entitled to no more relief than that which is set forth immediately hereinabove.

8

42.     Defendant, Webster University, by and through its disclosed legal counsel, further stated in the Reply Letter that approximately midway through the Practicum, Dr. Henning was aware that Plaintiff was not adequately developing the basic counseling skills necessary to pass the Practicum and be placed in the internship, which is the next level of field experience and training required by the Masters Program. As a result, it is asserted that Dr. Henning provided Plaintiff with several extra one-on-one sessions in order to assist Plaintiff in developing such skills. Again, this despite the fact that Plaintiff was never received any one-on-one sessions with Dr. Henning and no such sessions were offered.

43.     Quite to the contrary, Defendant, Webster University, by and through Dr. Henning, advised Plaintiff that the University would be willing to work with him to progress and Plaintiff could do another Practicum for three (3) credit hours versus taking an additional class.

44.     Additionally, Webster University, by and through Dr. Henning, advised that it may take several Practica to progress.

45.     Defendant, Webster University, failed to comply with the representations made by Dr. Henning.

46.     Defendant, Webster University, failed to live up to its representations that it would assist the Plaintiff or otherwise permit the Plaintiff to perform another Practicum or class.

47.     The Defendant, by and through its disclosed legal counsel, and as reflected in the Reply Letter, stated that approximately two (2) weeks prior to the end of the term, Dr. Henning advised the Plaintiff that should he not adequately demonstrate adequate improvement in his basic counseling skills prior to the end of the term, he would not pass the Practicum and receive a "No Credit" grade. This despite the fact that no such disclosures, advice, or other communication in this regard was received by the Plaintiff.

48.     The Defendant's assertion that the Plaintiff lacked "basic counseling skills" can amount to and is completely consistent with not generally fitting into or having

9

success in the Counseling profession, and, as such, the Counseling Advisory Committee should have been utilized.

49.     Defendant, Webster University, utilized the Student Handbook which references the Counseling Advisory Committee.

50.     Nothing in the Student Handbook advises or otherwise references that the Counseling Advisory Committee is solely for "unusual cases" or for "something over and above" the basic terms of the Masters Program as alleged by the Defendant, Webster University, by and through its legal counsel, as reflected in the Reply Letter.

51.     The Defendant, Webster University, offered nothing to support its contention that the Plaintiff failed to fall into any category which would constitute an "unusual case."

52.     In short, there was no remediation offered to the Plaintiff by the Defendant, Webster University, as required, especially within the context of an "A" student.

53.     That the Defendant deprived Plaintiff with the remediation and due process accorded Plaintiff in the Student Handbook.

54.     That Plaintiff will be unable to obtain a similar Counseling degree from another academic institution utilizing the benefit of the credit hours earned and cost incurred by Plaintiff in the Masters Program.

### COUNT I – NEGLIGENT MISREPRESENTATION

55.     Plaintiff realleges each and every allegation set forth above as if fully set forth herein.

56.     Defendant's representations, by and through Dr. Henning, that Dr. Henning would assist Plaintiff to improve his Counseling skills were made in the ordinary course of Plaintiff's practicum.

57.     Defendant, by and through Dr. Henning, failed to exercise reasonable care in carrying out her duties as the Director of, and by way of oversight of, the Masters Program because at no time did Dr. Henning actually provide Plaintiff with any means or methods, including but not limited to one-on-one counseling sessions nor additional

10

practica, to assist Plaintiff in improving his counseling skills that she specifically offered to Plaintiff.

58.     Defendant failed to exercise reasonable care in carrying out its responsibilities set forth in the Student Handbook for its failure to implement the Counseling Advisory Committee to address the exact circumstances for which the Committee should be used as represented by Defendant by and through its counsel, for redress of Plaintiff's "general fit with the counseling profession".

59.     That Defendant misrepresented the use of the Counseling Advisory Committee by stating, by and through its counsel, that the use of the Committee is for "unusual cases" though such prerequisite is not stated nor implied in the relevant text of the Student Handbook.

60.     That the failure of Defendant, by and through Dr. Henning, to provide Plaintiff with one-on-one counseling sessions, and the failure of Defendant to engage the Counseling Advisory Committee, renders both Dr. Henning's representations to Plaintiff and Defendant's representations in the Student Handbook to be false.

61.     The representation by Defendant, by and through Dr. Henning, to provide Plaintiff with one-on-one counseling sessions was made intentionally by Dr. Henning as the Director of the Masters Program and the reviewer of Plaintiff's performance in the Practicum.

62.     The representation made by Defendant regarding the use of the Counseling Advisory Committee was intentionally stated as set forth in the Student Handbook applicable to all students in the Masters Program.

63.     Plaintiff justifiably relied on the representations of Defendant in the Student Handbook supplied to Plaintiff and all other students in the Masters Program, and those representations by Defendant, by and through Dr. Henning, as Director of the Masterss Program, that Plaintiff would be offered one-on-one counseling sessions or extra practica to enhance Plaintiff's Counseling skills, as Plaintiff's basis for enrolling in, and engaging in, the Masters Program and Practicum.

64.     As a direct and proximate result of the misrepresentations made by Defendant, by and through Dr. Henning, and by Defendant, by way of its misrepresentations of the Counseling Advisory Committee, the Plaintiff has incurred significant losses in the form of delayed pursuit of education, which in turn has delayed Plaintiff's ability to earn income, as well as Plaintiff has thereby incurred extensive attorneys' fees, Court costs, tuition, book expenses, study expenses, and related ancillary expenses arising therefrom, all to Plaintiff's detriment in an amount well in excess of the jurisdictional minimum of this Court, not less than $1,000,000.00.

WHEREFORE, Plaintiff prays this Honorable Court enter a Judgment in favor of Plaintiff and against the Defendant in an amount not less than the jurisdictional minimum of this Court, punitive damages $2,000,000, attorney's fees and for such other and further relief as the Court deems appropriate in the circumstances.

## COUNT II – FRAUDULENT MISREPRESENTATION

65.     Plaintiff realleges each and every allegation set forth above as if fully set forth herein.

66.     Defendant, by and through Dr. Henning, represented that she would provide Plaintiff with one-on-one counseling sessions or permit Plaintiff to perform additional practica to improve Plaintiff's Counseling skills.

67.     The representations made by Defendant, by and through Dr. Henning, were false in that Dr. Henning at no time provided one-on-one counseling sessions to Plaintiff nor did she permit Plaintiff to perform additional practica.

68.     Defendant, by and through Dr. Henning, knew that Dr. Henning had not provided Plaintiff with one-on-one counseling sessions nor permitted Plaintiff to perform additional practica to improve Plaintiff's Counseling skills, nor had Dr. Henning intended to provide or permit the same to occur.

69.     Defendant, by and through Dr. Henning, intended that Plaintiff continue to perform the Practicum as a result of Dr. Henning's representations.

70.     Plaintiff had no knowledge, nor reason to know, that Defendant, by and

12

through Dr. Henning, would not fulfill her obligations to provide Plaintiff with one-on-one counseling sessions nor permit Plaintiff to perform additional practica to improve Plaintiff's Counseling skills.

71.     Plaintiff relied on Dr. Henning's representations in continuing Plaintiff's performance of the Practicum and participation in the Masters Program, and had the right to rely on Dr. Henning's representations by reason of Dr. Henning's directorship of, and supervisory role over, the Masters Program and Plaintiff's performance in the Practicum.

72.     As a direct and proximate result of the intentional misrepresentations made by Defendant, by and through Dr. Henning, to provide Plaintiff with one-on-one counseling sessions or permit Plaintiff to perform additional practica to improve Plaintiff's Counseling skills, the Plaintiff has incurred significant losses in the form of delayed pursuit of education, which in turn has delayed Plaintiff's ability to earn income, as well as Plaintiff has thereby incurred extensive attorneys' fees, Court costs, tuition, book expenses, study expenses, and related ancillary expenses arising therefrom, all to Plaintiff's detriment in an amount well in excess of the jurisdictional minimum of this Court, not less than $1,000,000.00.

WHEREFORE, Plaintiff prays this Honorable Court enter a Judgment in favor of Plaintiff and against the Defendant in an amount not less than the jurisdictional minimum of this Court, punitive damages of $2,000,000, attorney's fees and for such other and further relief as the Court deems appropriate in the circumstances.

## COUNT III – BREACH OF CONTRACT

73.     Plaintiff realleges each and every allegation set forth above as if fully set forth herein.

74.     The Plaintiff embarked on pursuit of his procurement of the Masters Degree knowingly subject to the Student Handbook which cited specifically the terms and conditions under which the Plaintiff was enrolling in said Masters Program with the Defendant, Webster University.

75.     Plaintiff and Defendant entered into a binding contract between a student

and an educational institution, the receipt and adequacy of consideration for which the parties acknowledged, as evidenced by Plaintiff paying tuition to Defendant in return for Defendant providing Plaintiff with educational services.

76.     That the Defendant, Webster University, had a duty and obligation to live up to its obligations under said contract.

77.     That at all times pertinent hereto Plaintiff satisfied Plaintiff's obligations under the terms and conditions of the Student Handbook referenced above and has fully paid tuition to Defendant.

78.     Defendant, Webster University, has not complied with the terms and conditions of its contract nor acted in good faith and fair dealing with respect thereto, by dismissing Plaintiff from the Masters Program after Plaintiff had achieved an exceptionally high GPA, had scored well on his Practicum, and paid over $70,000 in tuition paid in full, books, and associated expenses, with the semester paid in full, without providing Plaintiff fair disclosure nor proper cause, or an opportunity for a hearing to address the same, in the backdrop of Plaintiff's whistleblowing of Defendant's professor's affair above.

79.     As a direct and proximate result of the breach by the Defendant of its duties and obligations under the Student Handbook, the Plaintiff has incurred significant losses in the form of delayed pursuit of education, which in turn has delayed Plaintiff's ability to earn income, as well as Plaintiff has incurred extensive attorneys' fees, Court costs, tuition, book expenses, study expenses, and related ancillary expenses arising therefrom, all to Plaintiff's detriment in an amount well in excess of the jurisdictional minimum of this Court, not less than $1,000,000.00.

WHEREFORE, Plaintiff prays this Honorable Court enter a Judgment in favor of Plaintiff and against the Defendant in an amount not less than the jurisdictional minimum of this Court, attorney's fees and for such other and further relief as the Court deems appropriate in the circumstances.

## COUNT IV – INTENTIONAL INTERFERENCE WITH BUSINESS EXPECTANCY

80.     Plaintiff realleges each and every allegation set forth above as if fully set

14

forth herein.

81.     That a claim for Intentional Interference with Business Expectancy requires evidence showing (i) a valid business expectancy, (ii) defendant's knowledge of the relationship, (iii) a breach induced of caused by such defendant's intentional interference, (iv) absence of justification, and (v) damages.  John Stehno v. Sprint Spectrum, L.P. and Amdocs, Ltd., (186 S.W.3d 247).

82.     That at all times pertinent hereto Plaintiff entered into the Masters Program under the reasonable expectation that receipt of the Masters Degree is necessary to seek and to obtain gainful employment and financial benefit in the counseling profession ("Counseling").

83.     That at all times pertinent hereto, Plaintiff was under the reasonable expectation that receipt of said Masters Degree was necessary for continued employment in the Counseling profession.

84.     That at all times pertinent hereto, Plaintiff fully intended to utilize his Masters Degree to secure and to obtain gainful employment and financial benefit in the Counseling profession and expected to continue employment as a professional Counselor.

85.     That Plaintiff's receipt of said Masters Degree would establish a probable future business relationship between Plaintiff and a prospective employer in the Counseling profession that would give rise to Plaintiff's reasonable expectancy of financial benefit from such relationship.

86.     The Plaintiff embarked on a pursuit of his procurement of the Masters Degree knowingly subject to the Student Handbook which cited specifically the terms and conditions under which the Plaintiff was enrolling in said Masters Program with the Defendant, Webster University.

87.     That the Defendant, Webster University, had a duty and obligation to live up to its obligations thereunder.

88.     That at all times pertinent hereto, Plaintiff satisfied Plaintiff's obligations

under the above described contract for educational services between Plaintiff and Defendant as well as the associated Student Handbook for the Masters Program referenced herein.

89.     That by reason of Plaintiff's successful academic performance in the Masters Program and by way of Defendant's failure to comply with its duties and obligations set forth in the Student Handbook, Defendant had no reasonable justification for dismissal of Plaintiff from the Masters Program.

90.     As a direct and proximate result of the breach by the Defendant of its obligations under the Student Handbook, the Plaintiff has incurred significant losses in the form of delayed pursuit of education, which in turn has delayed Plaintiff's ability to earn income, as well as Plaintiff has incurred extensive attorneys' fees, Court costs, tuition, book expenses, study expenses, and related ancillary expenses arising therefrom, all to Plaintiff's detriment in an amount well in excess of the jurisdictional minimum of this Court, not less than $1,000,000.00.

WHEREFORE, Plaintiff prays this Honorable Court enter a Judgment in favor of Plaintiff and against the Defendant in an amount not less than the jurisdictional minimum of this Court, punitive damages of $2,000,000, attorney's fees and for such other and further relief as the Court deems appropriate in the circumstances.

### COUNT V – VIOLATION OF DUE PROCESS 42 U.S.C.A. § 1983

91.     Plaintiff realleges each and every allegation set forth above as if fully set forth herein.

92.     In Charlotte Horowitz v. Board of Curators of the University of Missouri et al., (538 F.2d 1317), the United States Court of Appeals for the Eighth Circuit concluded that, where the dismissal of a student in the School of Medicine resulted in her being stigmatized in such a manner that she would be thereafter unable to continue her medical education, and as a result thereof, her chances of employment in the medical field were severely damaged, the School's dismissal of her violated her due process rights as a student when it was unaccompanied by a hearing, citing Board of Regents v. Roth, (408

16

U.S. 573, 92 S. Ct. 2707 (1972)), the Supreme Court determined that the action of a state which "imposed ... a stigma or other disability that foreclosed ... freedom to take advantage of other employment opportunities" would thereby deprive a person of liberty which could not be achieved without notice and a hearing.  Though Ms. Horowitz excelled in all rotational units and her performance was outstanding, certain faculty members felt her clinical performance was deficient due, in part, to a lack of rapport.  Though the criticism's of Ms. Horowitz's performance were verbally communicated to her, and she was told that her relationships with others must improve, she was not shown or given copies of her formal course evaluations, nor given a chance to appear before the oversight Council on Evaluation or Coordinating Committee (or provided copies of their evaluations or evidence), nor a hearing in which Ms. Horowitz could address any issues, prior to the School's dismissal of Ms. Horowitz from the School.

93.     Similar to the facts in Charlotte Horowitz v. Board of Curators of the University of Missouri et al., the Plaintiff herein excelled at his coursework and achieved all "A's" and one "C", he was verbally instructed by the Defendant, by and through Dr. Henning, that his Counseling skills must improve, and yet the Plaintiff was not provided copies of Practicum evaluations nor given an opportunity to meet with, be counseled by, or have any manner of a hearing in front of, the Counseling Advisory Committee, the Department of Behavioral and Social Sciences at Webster University, or the Dean of Webster University, prior to Plaintiff's dismissal from the Masters Program.

94.     As a direct and proximate result of the actions of the Defendant herein, Plaintiff's chances of returning to an academic institution to obtain a Counseling degree, as well as Plaintiff's chances of obtaining employment in the Counseling profession, have been severely damaged.

95.     As a result of the undertakings pursued by Plaintiff with Defendant in furtherance of his pursuit of a Masters Degree, Plaintiff spent in excess of $70,000.00 for tuition, books, and expenses to attend and complete his studies in the Masters Program, only to be unfairly dismissed without due process.

96.     As a direct and proximate result of the breach by the Defendant of its obligations under the Student Handbook, the Plaintiff has incurred significant losses in the form of delayed pursuit of education, which in turn has delayed Plaintiff's ability to earn income, as well as Plaintiff has thereby incurred extensive attorneys' fees, Court costs, tuition, book expenses, study expenses, and related ancillary expenses arising therefrom, all to Plaintiff's detriment in an amount well in excess of the jurisdictional minimum of this Court, not less than $1,000,000.00.

WHEREFORE, Plaintiff prays this Honorable Court enter a Judgment in favor of Plaintiff and against the Defendant in an amount not less than the jurisdictional minimum of this Court, punitive damages of $2,000,000, attorney's fees and for such other and further relief as the Court deems appropriate in the circumstances.

KODNER WATKINS KLOECKER, LC

By:_____
ALBERT S. WATKINS, #34553
LOREN I. ETTINGER, #44246
Attorneys for Plaintiff
The Bank of America Building
7800 Forsyth Blvd., Suite 700
St. Louis, Missouri 63105
Phone:  (314) 727-9111
Facsimile:  (314) 727-9110
E-mail:  albertswatkins@kwklaw.net
             lettinger@kwklaw.net